May it please the Court, the Department of Homeland Security has a policy and practice of detaining people without giving them bond hearings, regardless of how long they're detained. Uncontested declarations in this case establish that at least 50 and probably several hundred people have been detained in the Central District of California for more than six months without ever getting a bond hearing. These people who have been denied bond hearings post Prieto, Casas, Castellon, Dioff, there's a whole trilogy, there's a trilogy of cases that I have some intimate familiarity with. I'll just be up front, one of the concerns I have is the law about bond hearings was in this circuit somewhat uncertain prior to those cases because there was a whole question of detention authority and then what rights or remedies went with it. And I have some concern that all of a sudden before there's been any, as far as I can tell, evidence that the Department of Justice, DHS, the government isn't going to comply with the legal rules that have now hopefully been established, why suddenly there's a class action to come along and jump in on the process. Well, Your Honor, let me answer that a few ways. We are all so familiar. It's good to see you again in that regard. I was arguing some of those cases with Mr. Benevitz. And this class action, of course, was filed before those cases. I know it was. Right. What we seek here is broader than the narrow interpretation or the narrow holding, I would say, of the Casas decision. And I say this with some hesitance because I hesitate to tell you what the Casas decision means. But there's no time limit in the Casas decision because it involves an individual detainee. Right. And same with Prieto and same with Giuffre. Our argument is that the hearing is required as a statutory matter at six months. So although the Casas decision was established through those cases, what the detention rights, the issues that were presented in that case, why is it necessary for a class action to come along and litigate in a class context where you're going to have people in variable stages or statuses within the detention center? For two reasons, Your Honor. Some of them, some of those folks may or may not have the rights of others depending on the authority for their detention. Isn't that correct? Well, our claim on the merits is that all of them have a right to a hearing once they've been detained for six months. Based on what statute? Well, we believe that all of these, there's four statutes at issue. They're all closely related. None of them explicitly authorize prolonged detention without a hearing. And we believe that since there are other statutes that do explicitly authorize detention beyond six months, we believe six months is the presumptively reasonable period for detention without a hearing. So why can't these be litigated on an individual basis just the way the others were? Two reasons, Your Honor. First, by the time they get here, or even by the time we get a decision in the district court, they're going to be beyond that time period. Well, so will in a class action. That's true. Whatever you're going to, I mean, a class action isn't going to speed things along. Well, we believe a class action would lead to an injunction which requires the government to hold a hearing at six months. And so then that's going to be true for people who are sitting in the detention center. So you're saying you want to interpret, you want this Court to interpret the statute to hold that there is an implicit six-month time limitation on a detention or on a bail hearing. Is that correct? We want the district court to do that. I understand. But I mean, we, the Federal court, the Federal court system to adjudicate whether there is a six-month limitation. Correct. I'm having trouble understanding why that issue, as a matter of statutory interpretation, requires a class treatment. If you are correct and the statute and this Court were to hold, a district court affirmed by this Court holds that there's, this is the whole indefinite detention jurisprudence has grown up. It's grown up in individually adjudicated cases. Why is that not an adequate way, appropriate way to litigate the issue of a time limit? All right. So, again, I'm going to give two answers to that. The first is, by the time the cases get even to the district court, and certainly by the time they get here, the question of whether six months is the time limit is not going to be before the Court. The shortest detention period in our consolidated cases, we had four consolidated cases that were argued before a panel with Judge Fischer, the shortest one was 22 months. That was the Juve case. And that was even after he had won in the district court and been ordered release. So the question whether six months is the appropriate time period is not going to be here. Why not? Well, because the Court will rule on the case before it that on these facts, this amount of detention is not authorized. And you have case after case after case doing that. Kajani, two-and-a-half years. Maderaja, four-and-a-half years. Prieto, three-and-a-half years. Kassa, seven years. Our cases, we believe that the rule was at six months. That's never going to happen. The second paragraph. Counsel, I have a question for you. To take Judge Fischer's questions on this, but from a slightly different slant as the way I'm concerned right now, and that is doubtless individuals could bring these claims as individuals, but in responding to Judge Fischer, could you address the Rule 23A and 23B2 issues that you think, you know, lead your clients to think a class is permissible? Yes, Your Honor. Let me just say one other thing, and then I want to answer that question, which is that the reality from having done these for several years, really since we won Maderaja and Kajani, the vast majority of these detainees that we're talking about, they do not have the ability to file habeas petitions. You know, they're unrepresented. Even if they have immigration lawyers, those lawyers do not practice in federal court. Many of them do not speak English. You know, we've done a few, a handful that have gotten here, but I've seen so many people in the district court who – I mean, sorry, in the detention centers in the central district who are not going to file these individual cases. Now, to answer your question, Judge Gould, we think if you leave aside for a moment our merits claim, which you may agree or may disagree on, we think we quite easily satisfy Rule 23A and 23B. What Rule 23 requires is a common core of salient facts or shared legal issues. And in our case, we believe there's a baseline constitutional problem with detaining people without a hearing for more than six months, and we believe that also that constitutional problem requires that the statutes at issue here all be read in the same way to avoid that constitutional problem. That is clearly a shared legal issue. There's really no dispute about it. The government – B-2 requires that. Of course, there's no predominance requirement, as you know. It only requires that there be an act – that the government act or fail to act pursuant to a common policy, right? And there is no government policy of keeping, you know, a clock, essentially, of keeping a time limit from the moment that you're detained up until six months. So, you know, if the detention authority is shifting as the person's immigration case moves through the system, they could be detained three, four years, like Mr. Rodriguez was detained for three years. And under the government's view, that's fine. You know, and this goes back to something else, Judge Fischer, I want to make sure that we're clear about. All of the cases that the Court had earlier in the Casas Prieto Juf Martinez set, those were all cases where the people's immigration case was pending before the Ninth Circuit, right? We have a separate problem, which is people get detained for prolonged periods of time within the immigration courts themselves. And so while their cases are pending at the immigration judge or the BIA, you know, you heard this morning an asylum case, right, where somebody – if I – I was just listening, so I may not have it exactly right, but, you know, he wins in the – he loses in the immigration court, goes to the BIA, the BIA remands it, he's back in front of the immigration court, more time passes, goes back to the BIA. I mean, this is what happened in Nataraja. Nataraja never even got to the Ninth Circuit in four and a half years. Now, in a case like that, there is no case in this Court which squarely holds that that person is entitled to a bond hearing. You know, we believe it's obvious from the rationale of Casas, but that's not the position the government has taken. Even now, even post-Casas, that's not the position they've taken. They think mandatory detention under 1226C or the equivalence of a custody review process for people who are arriving aliens applies to those people. So we have no mechanism to resolve that claim. So you think that your six-month rule would require a bond hearing, even for someone who is under mandatory detention? Yes, Your Honor. We believe DMR v. Kim – this is, I think, quite clear from Tajani and Nataraja and Casas – DMR v. Kim applies to expeditious removal proceedings. So when you have somebody who's been sitting in front of the immigration courts for four and a half years, we don't think that – we think that person is entitled to a bond hearing. Now, you know, again, I don't want to get too much into the merits, but obviously if it's their fault, right, because they've delayed it, then they can be denied of the hearing. You know, Judge Gould, we're not asking for all these people to be released. All we're saying is a minimal bond hearing of the kind that they do every day for some number of cases should be given to everybody at six months. Let me ask this question. Do you have a position on whether in – regardless of what the status or the authority of detention is, that who has the burden of proving risk of flight, risk of danger to the public? We do, Your Honor. Your Honor, Cooper v. Oklahoma – well, let me answer the question, which is the government bears the burden of proof beyond six months. And when the detention is beyond six months, Cooper v. Oklahoma, which is the case cited by Tajani on the burden issue, says that any time you have a substantial deprivation of liberty, the government should bear the burden to prove that the detention is – or that the deprivation of liberty is justified. So we think that's true regardless of whether, you know, the detainee is – you know, what procedural posture they're in. But there's one other point I want to make about that, Your Honor. All of the detention statutes that we're talking about here potentially apply to lawful permanent residents. And this is a point that the Nadaraja Court made explicitly. Even though Mr. Nadaraja was an asylum seeker who had never spent even a day in the U.S., except, you know, through his detention, because the statute at issue, 1225b, applies to – potentially to returning lawful permanent residents, it has to be construed to avoid the constitutional problem that would arise in that context. You know, that's also the Supreme Court's holding in Clark v. Martinez. Every one of our statutes that we're talking about here potentially – and in fact does in the world – is applied to lawful permanent residents. And for that reason, all detainees, regardless if they're LPRs or not, are entitled to six-month – a hearing within six months? Well, Congress could have written the statutes differently. Yeah. That's your position. Yeah. That's our position because Congress has chosen not to distinguish between LPRs and non-LPRs for purposes of these detention statutes. Now, in the – Am I right? Oh, go ahead, Judge Fletcher. My question is, in the situation where the individual is being held under mandatory detention, the hearing would be to establish whether he's correctly held within that? No, Your Honor. Although, well, we believe that the hearing at issue here, as a practical matter, does take into account both the merits and danger and flight risk. That's just the way they actually happen in front of immigration judges. But, no, this would not be like a Joseph hearing, which is a hearing which would concern whether or not you're properly categorized. This would be just a danger and flight risk hearing. Mandatory detention is meant for removal proceedings that are expeditious. Once you've been there for a while, then they have to individually determine whether you're a danger or a flight risk. Judge Gould, you had a question, and I'd like to reserve the remainder. My question, just to clarify, and there may be newer law in this, my understanding was that under the Supreme Court's Eisen case, we don't go too far into the merits. So to decide your appeal, as I understand it, we don't have to decide whether every after six months, we just have to decide whether under Rule 23, A and B, you have a right to present that issue on a class basis to the district court. So am I am I missing something or is that the question? Sorry to interrupt you, Judge Gould. That is absolutely right. That's my understanding of the law as well. We're having a discussion here about the merits because of the individual cases that came after. But whatever you think of our claim, it's clearly a colorable claim. We have a right to present that argument to the district court and to present it on a class because it presents a common legal issue. In addition, it arises out of a common government policy, and therefore, we meet the requirements of Rule 23. And if the district court decides that you don't get a hearing at six months, or if the district court wants to decide that some people do and some people don't, and that's for later. I'd like to reserve that. Give you a minute. Okay. Good morning. May it please the Court. John Unschein on behalf of the Respondents. Your Honors, the district court did not abuse discretion by denying class certification in this case. Where the habeas Petitioners or what was requested was prohibited, first of all, by a specific statute. That would be Habeas C. 1252-F1 that we cite. Two, where certification would otherwise require the district court to largely ignore a set of distinct statutes that are already on the books and case law that interprets those statutes in order to enter the class certification motion. Counsel, should we suggest possibly that there be subclasses for each statute? No, Your Honor. And getting to why that is, and perhaps this will answer your question why, first of all, at an irreducible minimum, when it comes to a petition for writ of habeas corpus, as the Court is well aware, in the vast majority of the cases, they are brought as individual claims. But in the other factor that is very important, of course, is particularly in the immigration context. The first question that is always asked by a court is what statute purports to authorize the detention of the individual that's before the district court. Well, that's why I think subclasses might be the way to go. Well, even then, Your Honor, the question becomes more finite. Once we find the statute, for example, in the Zabidas case, the statute there in question was 1231-A6, and that was detention after the removal period and whether one could be subjected to prolonged indefinite detention. When the Court reached its decision in that case, it did not conclude as a matter of law that the decision reached inadmissible aliens. It reserved that judgment. Even though it was the same statute that spoke of inadmissible aliens, of course, later on in Clark v. Martinez, they extended the holding in that case to inadmissible aliens. Beyond that, if you look at specific statutes in the post-final order of removal scheme, you have individuals that may be detained during a removal period, after a removal period. You also have cases that are really dependent on a set of facts. For example, there is a provision that allows the suspension of the removal period where someone acts to prevent their removal, an alien, such as by not filling out the proper paperwork or physically resisting their removal. The decision that their detention is authorized, if that's the common – that's the core fact that's involved in that case, that necessarily requires an analysis of whether or not the individual is actually obstructing their removal. So it gets down to a finer degree than simply the question of what statute controls. To answer your question, Judge Fletcher, I don't think it would be appropriate for subclass certification, even getting down to a specific statute. And as the government has put forward in its briefs, and we think that the district court properly denied it with regard to the class certification on the basis that the government put forward, to drop back one step, I think overhanging all of this is the statute that we state specifically precludes this type of certification. At 8 U.S.C. 1252-F1, the Supreme Court, I think, summed it up best when it talked about the Reno v. AADC case, that by its plain terms in referring to the statute and even by its title, 1252-F is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting class-wide injunctive relief against the operation of Part 4 of the Immigration Act. Part 4 of the Immigration Act. Counsel, my question on that, why doesn't that statute permit declaratory relief? Why is it your position that that statute prohibits declaratory relief that could apply to a class? As the Court is well aware, and as the Supreme Court said in Calderon v. Ashmis, declaratory relief on its own is not a basis for jurisdiction. To the extent that declaratory relief can be issued, if it is, to the extent that any declaratory relief would impede on the operation of those statutes and essentially alter the way that the statute states, it would restrict the operation of 12 of the detention statutes. Essentially, it would be an end run, but still have the ultimate outcome of the act that is prohibited by 1252-F1. And clearly, what is being requested here ultimately is the implementation of a procedure that no statute requires.  And in fact, such a procedure would be prohibited by the statutes themselves. Judge Fischer brought up mandatory detention. Mandatory detention in the Moore case, I believe there, there was a five-month mandatory detention that occurred in DeMoore. Assuming that the final order of removal came down, right after that final order of removal issues, there is a mandatory three-month period of detention under 1231A. That term of time, five months plus three months, is eight months. Nowhere in the statutes is there a provision that says, in fact, it would run counter to the statutes, that one must be provided a bond hearing. If one is provided a bond hearing, then the ultimate result of that bond hearing would be a denial of bond. Such a futile implementation of a procedure is not in the regulations, and for good reason. The statute precludes it. And we believe that class certification in this case, getting to that four, would also would reach a result that is not permitted by the statutes. What's your position on that? Counsel, I go ahead. Go ahead. Let me ask one quick question. What's your position on who bears the burden of proof in bond hearings? Well, Judge, it depends on, again, the statute that's involved. In McCossa's case, there is no evidence in the record that there is a burden consistent with the Tahani decision, and that's what the government would be obligated to follow. It was just stated that, on Petitioner's behalf, that the government is systematically not doing what it's supposed to do under the statutes. There's no evidence in the record of that. To the extent that there is, I believe there's a declaration by an attorney. Particularly post-Cossas, post-Credo, there is absolutely nothing in the record, of course, that would be impossible because the decisions came afterwards. Under the Cossas regime of those particular persons, it's the government. Under the other 236A Credo individuals, those persons would fall under the regulations of the government, and there the alien has the burden of proof. Another factor that was brought up by the questioning just a moment ago is this idea that there has to be a bond hearing talking about procedures and how people fall in uncommon positions or atypical positions from one another, but still are all included in this very broad class. The Zabidas decision requires that at the six-month mark, after there's a final order of removal, that there be a hearing to determine whether or not one's removal is significantly likely to occur in the reasonably foreseeable future. There is no discussion of whether one should be entitled to release. The question at that point, if the alien can be removed, that is the question. That's the only question. The alien has the burden in that case to demonstrate that they can't be removed. The government can rebut that presumption. Again, another set of facts and legal circumstances that are not conducive to class certification, and we believe... Counsel, my question for you, the last several arguments you made, I could be opposed to the 23A and B2 factors. That is, under EISEN, why is it that we should be concerned if the statute prohibits declaratory and injunctive relief? Why isn't that something that a district court with a certified class should decide for the government, relating to the class? Well, Judge Gould, to the extent that we are touching upon the merits of a decision and talking about what the ultimate outcomes were of the Ninth Circuit cases, I don't think we need to get to that and still be, with regard to the EISEN case, be within the parameters of discussing non-merits issues and class certification issues only. And specifically, as I indicated, when it comes to habeas corpus and class certification, we first have to define the claim that's involved and whether or not there's a common claim or set of facts. And in the habeas context, that necessarily requires determining where, under the detention statutes, each individual detainee falls. And here, those statutes are varied. So at the get-go, whether or not ultimately that detention under that statute is lawful is a question, as Your Honor, as Judge Gould has indicated, is something that may well indeed be left for the merits part of the case. But at the very basic minimum, we have to have a set of common claims. Those common claims have to begin at a common platform. And those platforms are the detention statutes. And even that, we would submit, is probably too broad. As I said, Zabidas interpreted one statute for one set of individuals and left the decision for how it would be interpreted for another set of individuals for a different case, which it did. So I don't believe, Judge Gould, that in my discussions that I'm focusing primarily on the merits, we believe that, and the district court properly, we believe, concluded that at its base, the initial steps of any claim, the commonality and typicality functions were not met here. Now the -- Thanks. I'm sorry, Your Honor? He said thank you. I said thank you. You're welcome, Judge Gould. Now, another factor, too, and it may not be an issue in this case, but this inherent concept of class certification as a common theme, of course, it doesn't happen very often. In the cases that were cited, the Wynn baby lifting case, the court there went to great measures to talk about how unique the circumstances were in that case and said it at least three times. And what was unique about that case, it was a case of orphaned babies, children, that were airlifted out of Vietnam during the tail end of the Vietnam War. They were expeditiously rushed out of Vietnam. Ultimately, the court found that not necessarily that the Rule 23 procedures applied directly, but analogous with those procedures formed a class. The reason they formed a class there is because of the exigent circumstances. They were all detained, if you will, but they were all brought over from the same orphanage. The claims that were involved in that case were claims of the government improperly bringing the children of individuals whose parents were still in Vietnam. So the common set of facts and circumstances there are in no way analogous to what is being brought and what was brought in this case. Beyond that, another case that the government did not cite to and should, but it's Alvarez-Mendez v. Stock. And that's at 941 FedSec at 956. And this, again, goes to the individual discrete questions that are involved in habeas actions. In Alvarez-Mendez, the court, this court held that the thing that matters about habeas petitions is whether or not an individual's detention today is lawful or not. Not whether or not it was lawful in the past, but whether it is lawful today. And that is another indication of why denying class certification here was proper. The definition of, the class definition that the petitioner sought to bring here would be a class of all noncitizens in the central district who are or will be detained for six months or longer. And Alvarez-Mendez v. Stock states that the unlawfulness of detention has to be today, not in the future. And that goes to the rightness argument that we made before the district court and reemphasized in pleadings here before the court. There's many variables that come together to really, I believe, push this court in the position of affirming the district court's decision here. There's clearly no abuse of discretion in finding the way that it did. To the extent that the petitioner is seeking to implement procedures by way of class certification into a system that contains no such procedures, there is history for the government following suit after a precedent decision is issued and amending the regulations or adding regulations to conform to that decision. And that would be the Zavidas case. Once Zavidas was issued, the government implemented regulations to implement the holding of Zavidas. Class certification is not the proper means. Historically, it's not the way to go about it in the context of habeas corpus petitions. And we believe that the court should affirm the district court's decision to deny class certification. And if there are no further questions, thank the court. All right. There aren't any. Thank you. Do you have a minute? Your Honor, I'll be brief. Well, you'll be brief by definition. That's the only way lawyers are brief. Cut them off. With respect to the 1252F arguments, Your Honor, I'd just like to refer the court to the fact that in the Real ID Act, Congress rewrote sections of 1252, that section, and added in when they wanted to preclude habeas petitions. They specifically referenced the habeas statute about four times, and they didn't put that in 1252F. In addition, Judge Gould, we agree that declaratory relief is clearly not barred under that statute. Well, 1252F doesn't preclude individual habeas. It only talks about injunctions, right? That's true, Your Honor, but the government is reading it as a bar on class action habeases. So the injunctive relief that would come in a habeas petition, the government is saying … Well, the individuals can still get habeas relief. Well, that's true, Your Honor, but … There's no suspension issue there. Well, but, Your Honor, the court is reading the bar on injunctive relief, that term, enjoin or restrain, to include habeas petitions. So the court, the government is reading it to encompass 2241. Individualized habeas? No, but as a statutory interpretation matter, Your Honor, Congress rewrote 1252 in 2005 to take out 2241 in about four places, and they didn't do it in 1252F. Right. In addition, you know, our claim is a statutory interpretation claim. We claim that the government is not correctly operating the immigration provisions, and I think that also is a reason why it doesn't apply. And as Judge Gould said, declaratory relief is not separately there, and both in Rule 23B and elsewhere in the statute, there's an explicit exemption for declaratory relief. We asked the district court for declaratory relief as a separate matter, and obviously we didn't get it. What is your position, counsel, on perhaps sending you back to define some subclasses? Yeah. I think if the court is concerned either about the burden of proof or about the different detention statutes, I think that's a matter of, you know, this court and the district court have discretion to do that, and, you know, that would be appropriate if the court believed that there wasn't a common — was not a sufficiently common question. And the last thing I would just say, Your Honor, is we waited eight months for the decision from the district court in this case, and while we waited, a lot more people ended up subject to prolonged detention waiting in the central district without a bond hearing. We do have data. It's not in the record, obviously. It's not in the record. Right. But we do have data, and I do believe it's a continuing problem.  Right. Thank you, Your Honor. All right. Counsel, thank you for the argument. Please submit it. Judge Fisher, could we take a 10-minute break before the last argument? Only because it's Cinco de Mayo. We'll stand and recess for approximately 10 minutes.
judges: Fletcher B. , Fisher, Gould